The STATE of Ohio, Appellee,

v.

RANDLEMAN, Appellant.

[Cite as *State v. Randleman* (1995), 108 Ohio App.3d 468.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–95–15.

Decided Dec. 5, 1995.

*David A. Bodiker*, State Public Defender, and *David E. Klaus*, Ohio Public Defender Commission, for appellant.

*Paul F. Kutscher, Jr.*, Seneca County Prosecuting Attorney, and *Kenneth H. Egbert, Jr.*, Assistant Prosecuting Attorney, for appellee.

EVANS, Judge.

This is an appeal by the defendant, Lorenzo Randleman, from a judgment entered by the Common Pleas Court of Seneca County on a jury verdict of guilty to a charge of having a weapon under disability, R.C. 2923.13(A)(2), and a charge of aggravated trafficking in drugs, R.C. 2925.03(A)(6) and (E)(6). Appellant was sentenced by the trial court to serve three to five years on the weapons charge concurrent with four to fifteen years for the drug charge in the Lorain Correctional Institute in Grafton, Ohio.

The event leading to appellant's arrest occurred the evening of May 26, 1994. Appellant was the front seat passenger in a car that was stopped by police officer Mike Clark for a routine traffic violation. During the stop, Officer Clark stood with the driver in front of her stopped vehicle. Keeping an eye on the passengers in the car, Clark became suspicious of appellant when he began moving around in the front seat, leaning forward and sideways. Accompanied by another policeman, Officer Clark moved to the side of the vehicle and asked the back seat passenger to step out of the car. The passenger was questioned about his identity and frisked. Appellant was then also asked to step from the vehicle. At this time, Clark recognized appellant from a previous incident involving weapons. The officer proceeded to pat down appellant for weapons. During the frisk, appellant voluntarily told Clark that he had marijuana in his jacket pocket. As Officer Clark retrieved the marijuana from the pocket, he also found a loaded magazine for a .380 caliber handgun. The officer then searched the front seat area of the car and found a loaded Bryco .380 semiautomatic handgun in the glove compartment. Aware that appellant was under a disability from other weapons-related charges, Clark arrested the appellant and placed him in fellow officer Stanley Sayre's cruiser for transport to the police station. After appellant was booked at the station, Officer Sayre returned to his patrol car and searched the back seat, where appellant had been sitting. Stuffed in the crack of the seat was a quantity of crack cocaine wrapped in baggies and a blue bandanna.

Appellant asserts three assignments of error for our review:

### Assignment of Error No. 1

"The trial court erred in overruling defendant's motion to suppress evidence which was seized in violation of the Fourth Amendment to the United States Constitution."

### Assignment of Error No. 2

"The trial judge committed prejudicial error and violated appellant's Fourteenth Amendment right to due process when he commented on the quality of the evidence and the credibility of the appellant's testimony."

### Assignment of Error No. 3

"Trial counsel for appellant made errors before and during the trial which deprived appellant of his right to effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution."

In his first assignment of error, appellant argues that Officer Clark lacked the reasonable suspicion needed to seize appellant, a mere passenger in the stopped car, when he asked appellant to step from the vehicle and, further, that the police officer lacked the reasonable suspicion needed to perform a patdown of appellant. Moreover, appellant argues that the trial court erred in overruling appellant's motion to suppress the evidence found as a result of the illegal search and seizure.

In answering appellant's first claim that the police illegally seized him, a passenger in the car, when they asked him to step from the vehicle, we begin our analysis by reviewing *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331. In *Mimms,* the United States Supreme Court held that police officers could order the driver of a lawfully stopped vehicle out of the car *without* reasonable suspicion that the police officer's safety was in danger or criminal activity was afoot. The driver in *Mimms* was stopped for driving with expired license plates. The officer asked Mimms to get out of the car and to produce his license and registration. When the driver stepped out, the officer noticed a bulge under his jacket. The ensuing frisk revealed a .38 caliber revolver, and the driver was then arrested. Mimms moved to suppress the evidence, claiming that an illegal seizure had occurred when the police had him step out of his car.

The Supreme Court weighed two competing interests in deciding the *Mimms* case. First, the court noted that police officer safety was a "legitimate and weighty" factor in their deliberations. Although the officer in *Mimms* had no reason to suspect the driver of being dangerous at the time of the stop, the court found the practice of asking the driver to get out of the vehicle as a precautionary

measure to be reasonable. The court recognized that this practice reduces the risk that the driver could make unseen movements and diminishes the likelihood of surprise assaults on police officers. Balanced against the safety factor was the intrusion on the driver's personal liberty. The court found the request to stand rather than sit during a traffic stop to be a *de minimis* intrusion, concluding that "[w]hat is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." *Mimms,* 434 U.S. at 111, 98 S.Ct. at 333, 54 L.Ed.2d at 337.

Finding the risks to police officers in roadside traffic stops to be the same whether the occupant is a driver or a passenger, many courts have extended *Mimms* to include passengers. See, *e.g., People v. Robinson* (1989), 74 N.Y.2d 773, 545 N.Y.S.2d 90, 543 N.E.2d 733; *People v. McLaurin* (1987), 70 N.Y.2d 779, 521 N.Y.S.2d 218, 515 N.E.2d 904; *People v. Maxwell* (1988), 206 Cal.App.3d 1004, 254 Cal.Rptr. 124; *State v. Ferrise* (Minn.1978), 269 N.W.2d 888; *State v. Willis* (Minn.1982), 320 N.W.2d 726. The Minnesota Supreme Court applied the *Mimms* holding to passengers in *State v. Ferrise.* In that case, police had ordered a passenger out of the car to assist the officer in identifying the driver. The court stated in *Ferrise,* "The same concern of the officers for their own safety applies, and the intrusion on the rights of the passengers occasioned by being required to get out of the car is no greater than the intrusion on the rights of the driver." *Ferrise,* 269 N.W.2d at 890.

The New York Court of Appeals used the same logic in *People v. Robinson.* In *Robinson,* officers ordered a passenger to exit a lawfully stopped vehicle. When the passenger stepped out, police noticed a handgun beneath his seat and arrested him. Upholding the officers' conduct, the court concluded:

"We conclude, as to defendant's Federal constitutional argument, * * * that precautionary police conduct directed at a passenger in a lawfully stopped vehicle is equally authorized, within Federal constitutional guideposts, as that applied to the driver. Inasmuch as the risks in these police/civilian vehicle encounters are the same whether the occupant is a driver or a passenger, 'police may order persons out of an automobile during a stop for a traffic violation.'" *Robinson,* 74 N.Y.2d at 775, 545 N.Y.S.2d at 91, 543 N.E.2d at 733, quoting *Michigan v. Long* (1983), 463 U.S. 1032, 1047–1048, 103 S.Ct. 3469, 3479–3480, 77 L.Ed.2d 1201, 1218–1219.

This court is persuaded by the aforementioned cases. We find police officers just as vulnerable to danger from passengers at traffic stops as from drivers. During traffic stops, officers are occupied with the duty of investigating drivers and cannot constantly watch the movements of passengers. Furthermore, we note that a "significant percentage of murders of police officers occurs when the

officers are making traffic stops." *Mimms*, 434 U.S. at 110, 98 S.Ct. at 333, 54 L.Ed.2d at 337 quoting *United States v. Robinson* (1973), 414 U.S. 218, 234, 94 S.Ct. 467, 476, 38 L.Ed.2d 427, 439–440. Allowing officers to ask a passenger to leave the vehicle so that his conduct can be better monitored is a modest infringement on a passenger's liberty interest. In light of the minimal inconvenience to the passenger, we see no reason to draw distinctions concerning the precautions taken by police when dealing with them. Therefore, we do not agree with appellant that a Fourth Amendment violation occurred when he was asked to exit the car.

Appellant also alleges that a Fourth Amendment violation occurred when Officer Clark performed a patdown of appellant for weapons. In *Terry v. Ohio* (1968), 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909, the United States Supreme Court held that a search of a person for weapons is permissible when a police officer has a reasonable suspicion that criminal activity is afoot or that his safety, or the safety of others, is in danger. Reasonable suspicion requires more than a hunch by the officer; rather, specific and articulable facts and circumstances must be present to authorize the intrusion of a stop and frisk. The reasonableness of the officer's action is judged by an objective standard: whether a reasonable, prudent person in those circumstances would believe his safety, or that of others, was threatened. In judging the reasonableness of a search, a court should look at the "totality of the circumstances." *State v. Smith* (1978), 56 Ohio St.2d 405, 409, 10 O.O.3d 515, 517, 384 N.E.2d 280, 282.

Looking at the facts in this case, we conclude that the search was reasonable and the trial court correctly denied appellant's motion to suppress. Officer Clark had lawfully stopped the vehicle in which the appellant was a passenger, around 11:30 p.m.. This nighttime stop is one factor to consider in determining reasonableness. *State v. Bobo* (1988), 37 Ohio St.3d 177, 179, 524 N.E.2d 489, 491–492. Second, Officer Clark testified that he became suspicious when he noticed the appellant moving forward and sideways in the front seat of the car. Clark said that he was unable to see appellant's hands during these movements. Third, when appellant was asked to step from the vehicle, and before the patdown began, Officer Clark recognized him. Clark was aware that appellant had a history of carrying guns. Finally, when reviewing the actions of Officer Clark, we give due weight to the officer's thirteen years of training and experience in law enforcement. *State v. Andrews* (1991), 57 Ohio St.3d 86, 88, 565 N.E.2d 1271, 1273–1274, citing *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 694–695, 66 L.Ed.2d 621, 628–629. Given the totality of these circumstances, we conclude that Officer Clark acted reasonably when he asked appellant out of the

vehicle and frisked appellant for weapons. Therefore, appellant's first assignment of error is overruled.

In the second assignment of error, appellant contends that a comment made by the trial judge in the course of appellant's testimony was improper and prejudicial. The relevant quote by the judge is contained in the following passage:

"Defense Counsel Van Der Klooster: Are you guilty of these two charges?

"Defendant: No, I'm not.

"Prosecutor Egbert: Objection, Your Honor. That's for the jury to decide.

"The Court: I know but they always ask the Defendant that. Like the rain falls from the sky. They always ask the Defendant, did you kill your wife? No, I did not. I swear to God I didn't kill my wife. They always ask that and all Defendants answer however they answer."

The record in this case reveals that trial counsel for appellant did not object to the court's comment. Therefore, in the absence of plain error, an objection to any improper comment by the court has been waived. *State v. Long* (1978), 53 Ohio St.2d 91, 94, 7 O.O.3d 178, 179–180, 372 N.E.2d 804, 806. Under the plain error analysis, a reviewing court will not reverse a trial court decision "unless, but for the error, the outcome of the trial clearly would have been otherwise. Notice of plain error * * * is to be taken with the utmost caution * * * and only to prevent a manifest miscarriage of justice." *Id.* at 97, 7 O.O.3d at 181, 372 N.E.2d at 808.

The comment by the court in this case does not rise to the level of plain error. While we do recognize the influence and weight the trial judge has on the jury, not all comment by a court is prohibited during trial. *State v. Wade* (1978), 53 Ohio St.2d 182, 187, 7 O.O.3d 362, 364–365, 373 N.E.2d 1244, 1248, citing *Starr v. United States* (1894), 153 U.S. 614, 626, 14 S.Ct. 919, 923–924, 38 L.Ed. 841, 845–846. In order to determine whether a trial judge's remarks were prejudicial, the Ohio Supreme Court in *Wade* set out the following rules:

"(1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their

possible impairment of the effectiveness of counsel." *Wade,* 53 Ohio St.2d at 188, 7 O.O.3d at 365, 373 N.E.2d at 1248.

In the case at hand, appellant has failed to demonstrate prejudice. We do not agree with appellant that the statement in issue would imply to a jury that all defendants who claim to be innocent are truly guilty. Rather, the comment is directed to the prosecution and is instructional in nature. Viewing the challenged statement under the totality of the circumstances, it seems clear that the judge was simply commenting on the commonness of the question asked by defense counsel, not the credibility of the defendant or defendants in general. Furthermore, at the close of the case, the judge instructed the jury to disregard anything the jury considered an indication of the court's views on the facts. This instruction cured any prejudice caused by the court's earlier statement. Therefore, appellant's second assignment of error is overruled.

In his third assignment of error, appellant claims that he was denied effective assistance of counsel. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693, places the burden on the appellant to show that his counsel was deficient to the degree that the attorney did not qualify as "counsel" under the Sixth Amendment and that the deficiency so prejudiced the defense that the appellant did not receive a fair trial. However, there is a presumption that counsel's conduct falls into a range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–695.

Appellant claims ineffective assistance of counsel on two occasions. First, appellant claims that his counsel was ineffective during the pretrial suppression hearing when she failed to call any witness, introduce any evidence, or argue that appellant had been illegally seized. However, in overruling appellant's first assignment of error, we concluded that Officer Clark was justified in asking appellant to step out of the car and in performing the patdown. Therefore, the failure to bring witnesses or evidence forward to argue illegal search or seizure was not prejudicial to appellant.

Appellant also claims that he was deprived of his right to effective assistance of counsel when his attorney failed to adequately investigate a prosecution witness. However, the record indicates that trial counsel did adequately investigate the witness. Counsel elicited impeachment testimony concerning the witness's criminal history. Information concerning a deal the witness made for her own benefit with the prosecutor involving information on appellant was also brought out at trial. In conclusion of the above, appellant's third assignment of error is overruled on both counts.

Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, the judgment of the trial court is affirmed.

*Judgment affirmed.*

HADLEY and SHAW, JJ., concur.

SHAW, Judge, concurring separately.

I concur with the majority in the disposition of each of the assignments of error. I write separately with regard to the second assignment of error because I respectfully disagree with the rather benign interpretation offered by the majority in addressing the remarks of the trial judge in a trial for drug trafficking and weapons under disability, to the effect that defense attorneys "always ask the Defendant that. Like the rain falls from the sky. They always ask the Defendant, did you kill your wife? No, I did not. I swear to God I didn't kill my wife. They always ask that and all Defendants answer however they answer."

I cannot agree with the majority in characterizing these comments by the trial judge as merely "instructional" or as "simply commenting on the commonness of the question asked by defense counsel, not the credibility of the defendant or defendants in general." On the contrary, I believe these remarks, coming from the trial judge, in the presence of the jury, at the precise moment when the defendant has just attempted to state his innocence from the witness stand, improperly reflect not only upon the credibility of the defendant but upon the credibility and effectiveness of defense counsel as well. Therefore, I believe these comments were clearly erroneous and potentially prejudicial.

It is only because (1) the general cautionary instruction regarding conduct of the judge during the trial was given at the conclusion of the case, and (2) I do not believe these remarks, standing alone, could have changed the outcome of the trial that I concur with the majority that the comments do not rise to the level of plain error.