DECISION AND JUDGMENT ENTRY
Marvin D. Riggs appeals his conviction for possessing cocaine, in violation of R.C. 2925.11(A) and (C). He assigns the following errors for our review:
 "I. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 "II. THE TRIAL COURT ERRED IN COMMENTING TO THE JURY CONCERNING HIS OWN ASSUMPTION ABOUT APPELLANT'S MOTIVE FOR TESTIFYING TRUTHFULLY ABOUT HIS PAST RECORD.
 "III. THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO A MAXIMUM TERM OF FIVE YEARS IMPRISONMENT."
Finding no reversible error, we affirm the judgment of the Washington County Court of Common Pleas.
 I.
During the early morning hours of February 13, 1998, Ohio State Highway Patrol trooper Stephen Roe clocked a vehicle traveling forty-eight miles per hour in a forty mile per hour speed zone in Marietta. Trooper Roe followed the vehicle and pulled it over. The appellant was driving the car, with his ex-wife seated in the front passenger seat. When Trooper Roe asked the appellant for his driver's license, the appellant admitted that he did not have one. The passenger produced a driver's license identifying her as Connie Riggs. Ms. Riggs owned the car that the appellant was driving.
After obtaining personal information from the appellant, Trooper Roe confirmed that the appellant's driver's license was suspended. Trooper Roe advised the appellant that he was under arrest for driving under suspension. The appellant explained that he was driving the car because Ms. Riggs did not like to drive at night. He informed the officer that he and Ms. Riggs were on the way to visit "Popeye" and "Rat" at a nearby house, but did not know the real names of these two individuals. The appellant also told Trooper Roe that he and Ms. Riggs were ultimately traveling to Florida.
Trooper Roe separately questioned Ms. Riggs and received slightly different information. Ms. Riggs told the officer that she and the appellant were on the way to the home of "Nick" and "Barb" at the time Trooper Roe pulled them over. While it was unclear whether "Nick" and "Barb" were the same persons as "Popeye" and "Rat," Trooper Roe also noted that Ms. Riggs gave a different description of the address to which they were headed. By Trooper Roe's estimation, the locations described by Ms. Riggs and the appellant were five miles apart. Ms. Riggs also claimed that she and the appellant were traveling to North Carolina.
After gathering information from the appellant and Ms. Riggs, Trooper Roe called for Washington County Deputy Sheriff Randy Stackpole, who was a certified "K-9" handler. Deputy Stackpole arrived about thirty minutes later, accompanied by a dog trained to detect the odor of various narcotics. Deputy Stackpole walked the dog around Ms. Riggs' car and awaited any reaction from the animal indicating its detection of narcotics. After a short time, the dog reacted as if it detected the scent of illegal drugs. After Deputy Stackpole reported the dog's reaction, he and Trooper Roe searched the vehicle for the presence of contraband.
While searching the passenger compartment, Deputy Stackpole found a paper bag behind the passenger side front seat. He and Trooper Roe opened the bag and found marijuana and cocaine inside. The marijuana was in a large plastic bag, while two separate baggies contained the cocaine. A subsequent laboratory test revealed that over fifty-three grams of cocaine were inside the two baggies. In addition, the officers found other evidence of drugs, drug paraphernalia, and drug residue inside the passenger compartment. A cigarette box containing a "coke straw" and a cigarette case containing marijuana cigarettes rested between the driver and passenger seats. Trooper Roe located a Tupperware container with marijuana residue behind the driver's seat, a mirror with cocaine residue underneath the passenger seat, and several marijuana "roaches" throughout the vehicle.
Trooper Roe also searched the trunk of Ms. Riggs' car. Among several bags and suitcases, Trooper Roe located a tri-fold men's shaving kit. Inside the shaving kit, Trooper Roe found porous blotter paper which later tested positive for LSD. The shaving kit also contained a large plastic baggie of marijuana and another small baggie containing cocaine. Later analysis revealed that the cocaine in the shaving kit weighed over five grams. Also in the trunk, Trooper Roe found a .38 caliber Derringer handgun. The gun was loaded with two live rounds. The appellant told officers at the scene that the gun belonged to him.
As a result of these events, the Washington County Grand Jury returned a three-count indictment against the appellant. The first count charged the appellant with possession of six doses of LSD found in the shaving kit in the trunk of the car, in violation of R.C. 2925.11(A) and (C)(5)(a). The second count charged the appellant with possession of a weapon while under a disability, in violation of R.C. 2923.13(A)(3). The appellant's alleged "disability" was a 1989 conviction for marijuana trafficking. The third count alleged that the appellant possessed cocaine in an amount of 58.513 grams, a third-degree felony in violation of R.C. 2925.11(A) and (C)(4)(c).[1] None of the counts in the indictment charged any crimes relating to the marijuana found in Ms. Riggs' car.
The appellant testified on his own behalf during trial. The appellant noted that Ms. Riggs had driven the car earlier that evening when she picked him up from his home in Ashtabula, Ohio. Ms. Riggs had driven the couple from Ashtabula to her home in Akron. When they left Akron, the appellant testified that he drove because Ms. Riggs did not like to drive at night. He denied ownership or knowledge of the shaving kit in the trunk and of any drugs found in the vehicle, but admitted knowing that Ms. Riggs was a drug dealer. The appellant also denied owning the .38 caliber Derringer found in the trunk. He did not remember telling officers the gun was his on the night of his arrest, but acknowledged that he may have said so in order to protect Ms. Riggs. The appellant also admitted to four prior felony convictions, including the one for marijuana trafficking in 1989. The appellant also testified that he had pled guilty in all of those prior felony cases because he was, in fact, guilty of those offenses. However, the appellant maintained his innocence of the offenses charged in this case.
The jury found the appellant guilty of possessing cocaine under count three of the indictment, and specified in its verdict form that "the amount of cocaine involved was more than 25 grams, but 100 grams or less." The jury acquitted the appellant on the remaining counts. After the Ohio Adult Parole Authority completed a pre-sentence investigation report (PSI), the trial court sentenced the appellant to five years imprisonment, the maximum term for a third-degree felony. At the sentencing hearing and in its sentencing entry, the trial court noted it was imposing a five-year sentence because the appellant posed the greatest likelihood of recidivism. The appellant commenced this appeal.
 II.
The first assignment of error alleges that the appellant's conviction is against the manifest weight of the evidence. When considering a manifest weight of the evidence challenge, the reviewing court's role is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy
(1998), 84 Ohio St.3d 180, 193. The reviewing court essentially acts as a "thirteenth juror" and may "disagree with the fact finder's resolution of the conflicting testimony." State v.Thompkins (1997), 78 Ohio St.3d 380, 387 (quoting Tibbs v.Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 2218,72 L.Ed.2d 652). In undertaking this role, we must dutifully examine the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. See id. However, our review is tempered by the principle that weight and credibility are generally issues for the trier of fact to resolve. State v.Thomas (1982), 70 Ohio St.2d 79, syllabus; State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus; Statev. Garrow (1995), 103 Ohio App.3d 368, 371. The reviewing court may reverse the conviction only if the fact finder, in resolving evidentiary conflicts, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins,78 Ohio St.3d at 387 (quoting State v. Martin (1983), 20 Ohio App.3d 172, 175). On the other hand, we will not reverse a conviction if the state presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt. State v. Eley
(1978), 56 Ohio St.2d 169, syllabus.
The appellant contends that the state did not prove beyond a reasonable doubt that the appellant knowingly "possessed" drugs within the meaning of R.C. 2925.11. The appellant concedes that a brown paper bag containing two plastic baggies of cocaine lay on the floor of the vehicle, behind the passenger seat. However, the appellant emphasizes his acquittal on the remaining counts contained in the indictment. The appellant notes that the jury acquitted him of charges relating to the contents of the vehicle's trunk, i.e. the loaded weapon and the drugs found in a shaving kit, meaning that it did not find that those items belonged to the appellant. Because of this determination, the appellant argues that he should not be guilty of possessing the cocaine found in the passenger compartment of the vehicle. The appellant maintains that the state failed to "tie" him to the cocaine inside the car, just as it failed to connect him to the evidence in the trunk. The appellant's argument is without merit.
"Possession" of a particular item of contraband may be actual or constructive. State v. Wolery (1976), 46 Ohio St.2d 316, 329;State v. Haynes (1971), 25 Ohio St.2d 264, 269-70. A person has "actual possession" if the item is within his immediate physical possession. State v. Fugate (Oct. 2, 1998), Scioto App. No. 97 CA 2546, unreported. "Constructive possession" exists when an individual is able to exercise dominion and control over an item, even if the individual does not have immediate physical possession of it. State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus; Wolery, 46 Ohio St.2d at 329. For constructive possession to exist, "[i]t must also be shown that the person was conscious of the presence of the object." Hankerson, 70 Ohio St. 2
at 91. Dominion and control, as well as whether a person had conscious presence of an item of contraband, may be established by circumstantial evidence. See State v. Jenks
(1991), 61 Ohio St.3d 259, 272-73. Moreover, two or more persons may have joint constructive possession of a particular item.State v. Mann (1993), 93 Ohio App.3d 301, 308; see, also, Statev. Callender (Jan. 20, 1998), Franklin App. No. 97APA03-391, unreported (fact that passenger was deemed to have constructively possessed illegal drugs did not necessarily exonerate defendant driver).
R.C. 2925.01(K) states:
 "`Possess' or `possession' means having control over a thing or substance, but it may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
Some courts have held that motor vehicles do not constitute "premises" for purposes of this statute. State v. Kurtz (Oct. 27, 1998), Franklin App. No. 98AP-210, unreported; State v. Brittman
(Feb. 10, 1994), Franklin App. No. 93AP-1005, unreported; Statev. Buckley (Feb. 6, 1986), Columbiana App. No. 83-C-52, unreported. Nevertheless, the basic principles behind R.C.2925.01(K) apply in determining whether the appellant "possessed" cocaine in this case. Accordingly, a defendant's mere presence in an area where drugs are located does not conclusively establish constructive possession. State v. Cola (1991), 77 Ohio App.3d 448,450; see, also, Cincinnati v. McCartney (1971),30 Ohio App.2d 45, 48 (defendant did not possess marijuana by merely standing six feet from marijuana plant in apartment he neither owned nor occupied). However, a defendant's proximity to drugs may constitute some evidence of constructive possession. State v.Fairrow (Nov. 27, 1995), Ross App. No. 95CA2096, unreported. Mere presence in the vicinity of illegal drugs, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession. State v.Fuqate, supra; see, also, State v. Rocker (Sept. 1, 1998), Franklin App. No. 97APA10-1341, unreported ("All that is required for constructive possession is some measure of dominion or control over the drugs in question, beyond mere access to them"). Thus, for example, furtive movements in an automobile may provide sufficient indicia of dominion or control over contraband, allowing an inference of constructive possession. Id.; State v.Fairrow, supra; In re Farr (Nov. 9, 1993), Franklin App. No. 93AP-201, unreported. Similarly, readily usable drugs found close to an accused supports a finding of constructive possession.State v. Kobi (1997), 122 Ohio App.3d 160, 174; State v. Pruitt
(1984), 18 Ohio App.3d 50, 58. Further, in the automobile context, "where one is found to be the driver of a car in which drugs are within easy access of the driver, constructive possession will be established." State v. Morehouse (Oct. 19, 1989), Cuyahoga App. No. 56031, unreported.
Several factors in this case indicate that the appellant was more than "merely present" in close proximity to the contraband. The highway patrol officers' search of the car revealed several items, apart from the cocaine behind the passenger's seat, containing either drugs or drug residue. Trooper Roe found a cocaine straw and a plastic container with marijuana residue behind the appellant's seat, as well as a mirror with cocaine residue under the front passenger seat. Trooper Roe also found marijuana roaches and/or rolled marijuana cigarettes in various areas throughout the vehicle, some of which would have been in the appellant's plain view as he drove the car. The presence of such a vast amount of drug evidence in the car supports an inference that the appellant knew about the presence of drugs and that he, along with his passenger, exercised control over each of the items found. Cf. State v. Soto (Oct. 4, 1990), Cuyahoga App. No. 57301, unreported (circumstantial evidence supported constructive possession when bag of cocaine found on floor between passenger and driver and when empty gum wrapper containing cocaine residue found in the ashtray). This inference is further supported by the appellant having been in the vehicle as either a passenger or driver for a significant amount of time prior to his arrest. The jury may have decided that the appellant had easy access to all items of contraband in the car, given the amount of time he had spent in the vehicle during the hours leading up to his arrest.
Further, the appellant admitted knowing that Ms. Riggs sold drugs for a living and that she had done so for several years. The appellant acknowledged that Ms. Riggs supported him financially with money she made from selling drugs. The appellant also admitted that it would not be unusual for Ms. Riggs to carry the amount of cocaine found behind the passenger seat when she "delivered and dropped of f" drugs. While denying knowledge of the cocaine, the appellant noted that Ms. Riggs was probably delivering drugs on the night of their arrest, considering the amount of cocaine in the car. The appellant also admitted that he was carrying only $7.00 at the time of his arrest, with no source of income apart from Ms. Riggs' drug sales, despite the fact that the couple was on their way to Florida and North Carolina for an extended period of time. Finally, Trooper Roe testified that the appellant and Ms. Riggs gave inconsistent responses concerning their immediate destination that night. These circumstances may have persuaded the jury that the appellant and Ms. Riggs were jointly delivering or dropping off drugs, perhaps to finance their trip to Florida and North Carolina. This conclusion would support an inference that the appellant exercised some control over the drugs that were in the car. Moreover, this conclusion is entirely consistent with the jury's verdict of acquittal concerning the items found in the trunk. The jury may have believed the appellant's testimony denying knowledge of the items in the trunk, while disbelieving his ignorance as to the items in the passenger compartment. As the trier of fact, the jury is free to believe all, part, or none of the testimony of each witness.State v. Nichols (1993), 85 Ohio App.3d 65, 76; State v. Barnhart
(Aug. 19, 1996), Washington App. No. 95CA37, unreported (citingState v. Antill (1964), 176 Ohio St. 61, 67).
Finding substantial evidence to support the jury's verdict, we overrule the first assignment of error.
 III.
In his second assignment of error, the appellant contends that the trial court made an inappropriate comment to the jury after the appellant voluntarily admitted to four prior felony convictions. Following this testimony, the trial court read the following limiting instruction to the jury concerning the appropriate consideration of the appellant's prior felonies:
 "Ladies and gentlemen, Mr. Riggs has voluntarily admitted that he has four prior felony convictions, one of which is drug trafficking. The evidence as to drug trafficking goes to an element of the offense with which he's charged, the second count, which is having weapons under disability. It is received, and you cannot consider it to prove his character or to show that he acted in conformity or in accordance with that character.
 "* * * The other three, they were voluntarily brought out — I assume — because, if he didn't [the prosecuting attorney] would bring them out. Those convictions — again — go to the issue of credibility, of believability, of whether or not his testimony can be believed. But they do not go, and they cannot be considered by you, as proof of his character or proof that he would act in that [sic] accordance with that character, but they can go to the issue of credibility."
The appellant argues that the trial court's comment on his motivation for admitting his past convictions, i.e. that the state would have brought them out anyway, improperly influenced the jury. The record, however, reveals that the appellant's trial counsel did not object to the court's comment as part of the instruction. Therefore, in order for us to afford the appellant any relief, the trial court's purported impropriety must rise to the level of plain error under Crim.R. 52(B). Absent plain error, the appellant has waived objection to any improper comment by the trial court. See State v. Long (1978), 53 Ohio St.2d 91,94. Under the plain error analysis, we will not reverse the trial court "unless, but for the error, the outcome of the trial clearly would have been otherwise." Id. at 97. A reviewing court takes notice of plain error with "utmost caution under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus. We find no plain error in this case.
The trial court must at all times remain impartial and refrain from comments which might influence the jury. State ex rel. Wisev. Chand (1970), 21 Ohio St.2d 113, paragraph three of the syllabus; State v. Boyd (1989), 63 Ohio App.3d 790, 794. However, challenged statements by a trial court in a criminal case will not justify reversal of a conviction unless the defendant demonstrates prejudice. State v. Wade (1978), 53 Ohio St.2d 182, paragraph two of the syllabus, vacated on other grounds (1978),438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157. In order to determine whether a trial judge's remarks were prejudicial to a defendant, courts must adhere to the following rules:
 "* * * (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel."
Id. at 188. In this case, the appellant argues that the trial court's comment undermined his credibility by making him appear less candid in the eyes of the court. However, we are not convinced that the appellant has established any prejudice resulting from the trial court's remark.
We do not agree with the appellant's claim that the trial court's comment totally undermined the appellant's credibility. The jury acquitted the appellant on two of the three counts charged in the indictment. The appellant's defense to all three counts was essentially the same, i.e. that he did not know any of the contraband was in the car. If the trial court's remark had truly swayed the jury's decision, it would have rejected the appellant's defense in toto and returned guilty verdicts on all three counts. We find it unlikely that the jury was affected by the trial court's remark in deciding the cocaine count, yet unswayed by it in deciding the remaining counts. Further, at the close of the case, the trial court instructed the jury to disregard anything "that you consider an indication of my views upon the facts * * *." This instruction cured any prejudice resulting from the remark challenged by the appellant. See Statev. Randleman (1995), 108 Ohio App.3d 468, 475. The second assignment of error is overruled.
 IV.
In his third assignment of error, the appellant challenges the trial court's imposition of a five-year prison sentence, the maximum term for a third-degree felony. The appellant argues that he had only one prior felony drug conviction, which was nine years old at the time of sentencing. Thus, the appellant contends that the trial court had no basis to conclude that he was likely to commit future drug offenses. The appellant also emphasizes that the state allowed Ms. Riggs to plead to a fifth-degree felony, leading to a much lighter sentence than the one imposed upon him. The appellant argues that this circumstance makes the appellant's sentence inappropriate. We disagree with the appellant, as the record supports the trial court's rationale for imposing the maximum term in this case.
An offender who has received a maximum term of imprisonment has a statutory right to appeal the sentence. R.C. 2953.08(A)(1) (a). Prior to the enactment of Senate Bill 2, which took effect on July 1, 1996, trial courts had virtually unlimited discretion in choosing a sentence within statutory guidelines. See, e.g.,State v. Hill (1994), 70 Ohio St.3d 25, 29; State v. Bruce
(1994), 95 Ohio App.3d 169, 172; Columbus v. Jones (1987),39 Ohio App.3d 87, 88. Accordingly, our standard of review was limited to examining whether the trial court abused its discretion in choosing a particular sentence. While Senate Bill 2 continues to vest trial courts with some discretion in choosing an appropriate sentence, this discretion is no longer as broad as it was under the former law. State v. Smith (Mar. 17, 1999), Meigs App. No. 98CA02, unreported; State v. Kauff (Nov. 9, 1998), Meigs App. No. 97CA13, unreported. In conducting our review, we recognize that Senate Bill 2 places various controls upon judicial discretion through statutory guidelines stating various purposes, principles, presumptions, and factors the court must
consider in making its sentencing determination. State v.Dunwoody (Aug. 5, 1998), Meigs App. No. 97CA11, unreported.[2]
"Stated another way, the legislature's imposition of standards [in Senate Bill 2] amounts to a statutory definition of abuse of discretion * * *." Id. Accordingly, an appellate court may reverse a sentence if it finds, by clear and convincing evidence, that the sentence is unsupported by the record or is contrary to law. R.C. 2953.08(G)(1)(a) and (d). "Clear and convincing evidence" refers to a degree of proof "which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." State v. Schiebel (1990), 55 Ohio St.3d 71, 74.
R.C. 2929.14(C) prohibits a trial court from imposing the maximum term of imprisonment for an offense unless the trial court determines that the offender falls into one of four classifications. State v. Holsinger (Nov. 20, 1998), Pike App. No. 97CA605, unreported; State v. Kauff, supra. Maximum sentences are reserved for those offenders who: (1) have committed the worst forms of the offense; (2) pose the greatest likelihood of committing future crimes; (3) certain major drug offenders; and (4) certain repeat violent offenders. R.C. 2929.14(C). When imposing a maximum sentence, the trial court must state its reasons for doing so, on the record, at the sentencing hearing.State v. Lenegar (Feb. 3, 1999), Vinton App. No. 98CA521, unreported; R.C. 2929.19(B)(2)(d). We will uphold a maximum sentence if the court's stated findings are supported by the record. See id.; State v. Rose (Sept. 15, 1997), Clermont App. No. CA 96-11-106.
In this case, the trial court imposed the maximum sentence after finding that the appellant "poses the greatest likelihood of recidivism." The trial court expressly stated this finding at the sentencing hearing and repeated it in its subsequent sentencing entry. In making this determination, the trial court considered the PSI, which detailed the appellant's lengthy criminal history, and was guided by R.C. 2929.12, which states in part:
 "(D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as indicating that the offender is likely to commit future crimes:
 "(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing * * * or under post-release control * * * for an earlier offense.
 "(2) The offender previously was adjudicated a delinquent child * * * or the offender has a history of criminal convictions.
 "(3) The offender was not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child * * * or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
 "(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
"(5) The offender shows no genuine remorse for the offense.
 "(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:
 "(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.
 "(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.
 "(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
 "(4) The offense was committed under circumstances not likely to recur.
"(5) The offender shows genuine remorse for the offense."
The trial court examined the PSI and made reference to the appellant's criminal history during the sentencing hearing. The appellant's record revealed numerous juvenile delinquency adjudications arising out of various crimes the appellant committed over a four-year period during his youth. The appellant was convicted of no fewer than twelve offenses as an adult, six of which resulted in prison sentences. The offenses committed during adulthood included grand theft, breaking and entering, escape, willfully eluding a police officer, receiving stolen property, trafficking in marijuana, simple assault, and domestic violence. Thus, the record reveals that at least four of the R.C.2929.12(D) "more likely to commit future crimes" factors existed, but contains no indication that any of the R.C. 2929.12
(E) "less likely" factors were present.
Nevertheless, the appellant argues that the record does not support the trial court's imposition of the maximum sentence because his only prior drug offense, a marijuana trafficking conviction in 1989, does not indicate a likelihood of committing future drug offenses. However, in examining the likelihood of an offender committing future crimes, R.C. 2929.12(D) and (E) do not limit an assessment of an offender's record to certain types of offenses. Rather, the statute calls for the sentencing court to consider by criminal convictions and determine whether the offender is likely to commit "future crimes" of any kind. Indeed, one of the overriding purposes of felony sentencing is to protect the public from future crime by the offender, not merely certain categories of criminal offenses. See R.C. 2929.11(A). The appellant's lengthy criminal record indicates unfavorable responses to various criminal sanctions previously imposed, including prior prison terms. The various offenses and the appellant's history as a repeat offender support the trial court's decision that the appellant is likely to commit future crimes. The appellant has not clearly and convincingly demonstrated otherwise. Therefore, we overrule the third assignment of error.
Having overruled each of the appellant's assignments of error, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
[1] Ms. Riggs was charged along with the appellant under count three of the indictment. She pled guilty to fifth-degree felony drug possession and was sentenced to five years community control sanctions.
[2] For example, under R.C. 2925.11(C)(4)(C), the trial court had to impose a mandatory prison term on the appellant for possessing cocaine in excess of twenty-five grams but less than one hundred grams. The appellant does not challenge the trial court's determination that a mandatory prison term was applicable in this case. The appellant challenges only the trial court's choice of the maximum prison term.