OPINION
{¶ 1} Defendant-appellant, Phillip E. Robison ("Robison"), appeals the February 27, 2003 judgment entry of the Ashtabula County Court, Western District, denying his motion to suppress. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} At about eleven o'clock on the evening of August 27, 2002, Officers Scott Vanderlind ("Vanderlind") and Rick Cedoz ("Cedoz") of the Geneva-on-the-Lake Police Department received a radio dispatch to respond to a "domestic" dispute reported by Cody Cunningham ("Cunningham") of 5736 Fess Drive. The dispatch did not specify who was involved in the dispute.
 {¶ 3} Both Vanderlind and Cedoz were familiar with Cunningham and her boyfriend, Robison, from prior complaints. Officer Vanderlind was under the impression that Robison and Cunningham were living together because he had previously responded to the report of an argument between Robison and Cunningham at Cunningham's residence. Officer Cedoz had previously responded to a reported altercation between Robison and Cunningham occurring on the strip at Geneva-on-the-Lake. On this occasion, Cedoz had also been to Cunningham's residence to retrieve a celluar phone belonging to Robison. From these previous encounters, Vanderlind and Cedoz were aware that Robison and Cunningham were dating and were familiar with Robison and the type of vehicle he drove, a maroon or burgundy colored Chevrolet pick-up truck.
 {¶ 4} As Officers Vanderlind and Cedoz approached to within a tenth of a mile of Cunningham's residence, they observed Robison driving a maroon or burgundy colored Chevrolet pick-up truck coming from the direction of Cunningham's residence. They immediately suspected Robison's involvement in the reported "domestic." Cedoz dropped Vanderlind off in the parking lot of the Lake Erie Beverage store, just across the street from Cunningham's residence, and began a pursuit of Robison.[1]
Robison was ultimately charged and pled "no contest" to the charge of operating a vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(1). The court sentenced Robison to sixty days in jail with fifty days suspended and one year of probation. The court also imposed a fine of four-hundred and fifty dollars.
 {¶ 5} On appeal, Robison raises the following assignment of error: "Whether the Court erred in denying Defendant's Motion to Suppress evidence as being the result of an illegal traffic stop."
 {¶ 6} At a suppression hearing, the trial court acts as the trier of fact. City of Ravenna v. Nethken, 2001-P-0040, 2002-Ohio-3129, at ¶ 13, citing State v. Mills (1992),62 Ohio St.3d 357, 366. As the trier of fact, the trial court must evaluate the evidence and judge the credibility of the witnesses.Mills, 62 Ohio St.3d at 366, citing State v. Fanning (1982),1 Ohio St.3d 19, 20. "The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence." State v. Searls (1997),118 Ohio App.3d 739, 741. Accepting the trial court's determination of the factual issues, the court of appeals must conduct a de novo review of the trial court's application of the law to those facts. Id.; State v. Stiles, 11th Dist. No. 2002-A-0078, 2003-Ohio-5535, at ¶ 11.
 {¶ 7} For the purposes of the Fourth Amendment's prohibition against "unreasonable searches and seizures," stopping an automobile and detaining its occupants constitutes a `seizure'."Delaware v. Prouse (1979), 440 U.S. 648, 653. The investigatory stop exception to the Fourth Amendment allows a police officer to "approach a person for the purpose of investigating possibly criminal behavior." Terry v. Ohio (1968), 392 U.S. 1, 22. "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." State v. Williams (1990),51 Ohio St.3d 58, 61, quoting United States v. Cortez (1981),449 U.S. 411, 417. "[T]he police officer involved `must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" Id., quoting Terry, 392 U.S. at 21.
 {¶ 8} "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances[,]" State v. Bobo (1988),37 Ohio St.3d 177, paragraph one of the syllabus; and the totality of the surrounding circumstances "are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Andrews (1991),57 Ohio St.3d 86, 87-88. Therefore, police officers may draw upon their own knowledge and experience together with the immediately surrounding circumstances in determining whether a reasonable suspicion of criminal activity exists to warrant making an investigatory stop. United States v. Arvizu (2002),534 U.S. 266, 273, quoting Cortez, 449 U.S. at 418. ("[t]his process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person'").
 {¶ 9} Robison argues that the trial court erred in denying his motion to suppress because there was no competent or credible evidence that he was present at Cunningham's residence on the evening of August 27, 2002. Robison points out that neither officer observed him leave Cunningham's residence and that the radio dispatch did not mention him either by name or description. Robison concludes, the officers had no articulable grounds for believing that he was involved in the alleged domestic dispute.
 {¶ 10} We disagree. Although the dispatcher never identified Robison as being at the scene of the domestic dispute, Officers Vanderlind and Cedoz could reasonably infer Robison's involvement with the domestic dispute based upon what they already knew about Robison's and Cunningham's relationship. Vanderlind and Cedoz knew that Robison and Cunningham were involved with each other. In less than a year, the police had twice been summoned to the scene of domestic altercations between Robison and Cunningham. Cf. State v. Taylor (2001), 144 Ohio App.3d 255, 259; State v.Randleman (1995), 108 Ohio App.3d 468, 473. Further, the dispatch reported that a domestic dispute was occurring, which suggests a dispute with family or a significant other.[2] Vanderlind and Cedoz encountered Robison in very close proximity to Cunningham's residence, driving away from the residence and at a late hour of the evening. Cf. State v. Comen
(1990), 50 Ohio St.3d 206, 210-211; State v. Patterson (1993),95 Ohio App.3d 255, 258. There was nothing unreasonable about the officers' inference that Robison was involved in the dispute to which they were responding.
 {¶ 11} Contrary to Robison's contention, it was not necessary that the officers actually observe Robison involved in the dispute. In the landmark Terry case, Cleveland detective Martin McFadden observed two men pacing back and forth on a downtown street, peering into a shop window, and conferring with a third man. 392 U.S. at 5-6. Although none of the men were engaged in any activity that was overtly criminal, the Supreme Court held that McFadden's suspicion that they were involved in criminal activity, "casing a job," was reasonable in light of McFadden's observation of the individuals' conduct and his experience as a police officer. Id. at 23 ("It would have been poor police work indeed for an officer of 30 years' experience in the detection of thievery from stores in this same neighborhood to have failed to investigate this behavior further."). It would have been equally poor police work for Officers Vanderlind and Cedoz not to investigate Robison as he drove from the direction of his girlfriend's residence when she had just summoned police to respond to a domestic dispute.
 {¶ 12} Our consideration of the officers' personal experience with Robison in the evaluation of the reasonableness of the stop distinguishes this case from the cases relied upon by the parties in their briefs, Bowling Green v. Tomor, 6th Dist. No. WD-02-012, 2002-Ohio-6366, and State v. Hrubik, (June 30, 2000), 11th Dist. No. 99-A-0024, 2000 Ohio App. LEXIS 2999. In both cases, the propriety of the stop depended on the veracity or reliability of the dispatch. In Tomor, where the stop was not valid, the court focused on the fact that the informant was anonymous and that there was a lack of adequate corroboration by the responding officer. 2002-Ohio-6366, at ¶ 11. In Hrubik,
where this court held the stop was constitutionally valid, there was an identified citizen informant and independent corroboration by the responding officer. 2000 Ohio App. LEXIS 2999, *1-*2, *8-*9. In the present case, the source of the dispatch was an identified citizen informant, Cunningham. However, there could be no issue of corroboration because the dispatch never mentioned Robison. While this dispatch in and of itself is insufficient to justify the stop, the officers' own knowledge of who Robison was and their prior experience of responding to domestic disputes between Robison and Cunningham justified their suspicion of his involvement in the dispute.
 {¶ 13} For the foregoing reasons, the judgment of the Ashtabula County Court, Western District, denying Robison's motion to suppress is affirmed.
Ford, P.J., Rice, J., concur.
[1] As Officer Cedoz "was attempting to stop the vehicle," Officer Vanderlind radioed that "Robison was the other individual involved and that he may have been drinking that night." This communication further strengthened Officer Cedoz' reasonable suspicion that Robison was involved in the domestic situation to which they were responding.
[2] At the suppression hearing, Cunningham testified that Robison was present at her residence during the dispute, but that the actual dispute was with a female friend of hers, Dar Brown.