[Cite as *State v. Thomas*, 2019-Ohio-4486.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28263 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-2120 |
| | : | |
| WALTER THOMAS | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of November, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. JANS, Atty. Reg. No. 0084470, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

BEN M. SWIFT, Atty. Reg. No. 0065745, P.O. Box 49637, Dayton, Ohio 45449
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Walter Thomas appeals from his conviction for possession of cocaine. He contends that the trial court erred by denying his motion to suppress evidence, arguing that the evidence was obtained as a result of an illegal traffic stop and illegal search. Finding no error, we affirm.

## I. Facts and Procedural History

{¶ 2} On July 28, 2017, Thomas was indicted on one count of possession of cocaine, a fifth-degree felony. Thomas moved to suppress the drugs, discovered during a search of his person, and statements that he made while in custody. A suppression hearing was held at which the sole witness was Dayton Police Officer Matthew Gray[1] and the only exhibit was a video recording from his cruiser's camera.

{¶ 3} Officer Gray testified that on July 6, 2017, he and Officer Zach Banks were patrolling the area of North Main Street and Delaware—a high-crime area where Gray had made several arrests for weapons and drugs. The officers saw a white Chevy Impala turn onto Delaware without signaling, so they followed. The vehicle soon parked on a curb and the officers pulled up behind it and initiated a traffic stop.

{¶ 4} The officers exited their cruiser, he and Officer Banks approached the vehicle on the driver's side, while Officer Gray approached on the passenger side. There were four people in the vehicle. Officer Banks spoke to the driver and told him that he had not signaled the turn. The driver told Banks that the vehicle did not belong to him and that he did not have a driver's license. Officer Banks asked him to exit the vehicle and took him to the cruiser.

---

[1] At the time that the events in this case occurred, Gray was a patrol officer. At the time of the suppression hearing, he was a detective.

{¶ 5} Meanwhile, Officer Gray shone his flashlight into the vehicle and saw Thomas, the defendant, in the back seat "stuffing something in his left pocket," though Gray did not see what it was. (Tr. 10). Thomas then pulled out his phone and began looking at it nervously. Officer Gray explained, "His hand is shaking. You could see his heart pounding (witness patting chest) like he's nervous." (*Id.*). Gray also noticed that Thomas was breathing heavily. This behavior concerned Officer Gray. It suggested to him, based on his training and experience, that there may be drugs or a weapon in the vehicle. Thomas was also wearing baggy pants, in the pockets of which drugs or a weapon could easily be concealed. For these reasons, Officer Gray asked Thomas to exit the vehicle and conducted a pat-down search. In Thomas's left pocket, Gray felt a "a plastic baggie with a knot" that felt "like a powdery, chunky substance." (*Id.* at 15). Officer Gray believed, based on his training and experience, that the baggie contained drugs, so he reached into the pocket and removed it. When Gray saw what was in the baggie, he thought it was heroin, but later testing showed that it was actually cocaine.

{¶ 6} The officers arrested Thomas and put him in the back of their cruiser. Officer Banks read Thomas his *Miranda* rights. Thomas agreed to speak to the officers without a lawyer and admitted the drugs were cocaine.

{¶ 7} The trial court overruled Thomas's motion to suppress. The court concluded that the seizure and search were both lawful, and that Thomas voluntarily waived his *Miranda* rights, so his admission to the officers was also admissible.

{¶ 8} Thomas pleaded no contest to the possession charge and was sentenced to community control for up to five years.

{¶ 9} Thomas appeals.

## II. Analysis

{¶ 10} Thomas assigns a single error to the trial court: the court erred by overruling his motion to suppress the cocaine and his statements to the officers. Thomas argues that the traffic stop and the pat-down search were illegal and that his statements should have been excluded as fruit of these poisonous trees.

{¶ 11} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* "But the appellate court must decide the legal questions independently, without deference to the trial court's decision." *State v. Hawkins*, Slip Opinion No. 2019-Ohio-4210, __ N.E.3d __, ¶ 16, citing *id.*

## A. The traffic stop

{¶ 12} Thomas first argues that the traffic stop was unlawful because the evidence failed to show that the police officers observed a traffic violation. But Thomas did not raise this issue in his motion to suppress, and the trial court did not consider it in its decision.

{¶ 13} Although the state does not argue that Thomas forfeited this issue by not raising it in the trial court, we conclude that he has done so. "[T]he defendant has the burden of raising any issues that might require suppression of evidence." *City of Toledo v. Reese*, 2018-Ohio-2981, 112 N.E.3d 514, ¶ 25 (6th Dist.), citing *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 524 N.E.2d 889 (1988), paragraph two of the syllabus ("Although the prosecution has the burden of proof in suppression cases, the defendant has the burden of both demonstrating that a warrantless search or seizure occurred and adequately clarifying the grounds upon which he challenges the legality of the search or

seizure."). We review a forfeited issue for plain error only. *See State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 62.

{¶ 14} There is no error here, let alone plain error. The evidence supports that the stop was lawful based on a traffic violation. It is a violation of Ohio traffic law to turn without signaling. *See* R.C. 4511.39(A). The trial court found that Officer Gray credibly testified that the officers saw the Chevy Impala make a right turn without signaling. We note too that the audio from the video recording of the stop has Officer Banks telling the driver that they stopped the vehicle because they did not see a turn signal.

{¶ 15} Thomas next argues that the traffic stop was unlawful because it was unreasonably prolonged, which is the argument he made in his motion to suppress.

{¶ 16} Although an officer's detention of a motorist may be initially justified by an observed traffic violation, the seizure " 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Rodriguez v. United States*, __ U.S. __, 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015), quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005).

{¶ 17} Here, we watched the video from the cruiser camera, and by our count, only about two minutes elapsed from the time that Officer Banks made contact with the driver to the time that Officer Gray discovered the drugs in Thomas's pocket. This does not qualify as a prolonged traffic stop.

{¶ 18} We conclude that the traffic stop was lawful.

### B. The pat-down search

{¶ 19} Thomas contends that Officer Gray's pat-down search of him was unlawful. Thomas argues that Gray did not really believe that his safety was in danger but rather

believed that Thomas was carrying drugs.

{¶ 20} "During the course of an investigatory stop and detention, law enforcement officers may conduct a pat down search for weapons if the officers have reasonable grounds to believe that the suspect is armed and dangerous." *State v. Keggan*, 2d Dist. Greene No. 2006 CA 9, 2006-Ohio-6663, ¶ 34, citing *State v. Jordan*, 2d Dist. Clark No. 05-CA-4, 2006-Ohio-1813, ¶ 26. And if the suspect is a passenger, the officers may remove the suspect from the stopped vehicle to conduct the pat-down search. *State v. Randleman*, 108 Ohio App.3d 468, 473, 671 N.E.2d 267 (3d Dist.1995). Reasonableness is a tricky standard. "Precisely defining 'reasonable suspicion' is not possible, and as such, the reasonable-suspicion standard is ' "not readily, or even usefully, reduced to a neat set of legal rules." ' " *Hawkins*, Slip Opinion No. 2019-Ohio-4210, __ N.E.3d __, at ¶ 20, quoting *Ornelas v. United States*, 517 U.S. 690, 695-696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), quoting *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "The level of suspicion required to meet the reasonable-suspicion standard 'is obviously less demanding than that for probable cause,' and 'is considerably less than proof of wrongdoing by a preponderance of the evidence' but is 'something more than an "inchoate and unparticularized suspicion or 'hunch.' " ' " *Id.*, quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), quoting *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

{¶ 21} To determine whether an officer had reasonable suspicion that a suspect was armed, the "totality of the circumstances" must be considered and "viewed through the eyes of the reasonable and prudent officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). "This

process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting *United States v. Cortez*, 449 U.S. 411, 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

{¶ 22} "A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct." *Id.* at 277. "[P]olice officers face an inordinate risk when they approach an automobile during a traffic stop." *State v. Jones*, 4th Dist. Washington No. 03CA61, 2004-Ohio-7280, ¶ 33. So "[t]he officer need not be absolutely certain that the individual is armed." *Jordan* at ¶ 26.

{¶ 23} In this case, it is a close question whether the circumstances supported a reasonable belief that Thomas had a weapon. The stop occurred around 2 a.m. in a high-crime, dimly-lit area, an area where Officer Gray had previously made arrests for drugs and weapons. Officer Gray had seen Thomas stuff something into his pocket and act very nervously—more nervously than was warranted simply because a police officer was standing nearby. In Gray's experience, people exhibiting this type of behavior often are hiding contraband or have committed a crime. To Gray, Thomas's movements suggested there could be drugs or a weapon in the vehicle. Thomas was also wearing loose sweatpants that could hide the contours of a weapon. We think that these facts and circumstances were enough to establish that Gray acted on more than a mere hunch and had a reasonable fear that Thomas might be armed, "justifying the slight inconvenience and minimal intrusion which a pat down search for weapons entails," *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 16. We defer to the trial court's finding

that Officer Gray acted out of a concern for his safety.

{¶ 24} Although the scope of this kind of pat-down search is limited to weapons, other contraband that is discovered may be admissible. *State v. Hansard*, 4th Dist. Scioto No. 07CA3177, 2008-Ohio-3349, ¶ 30. The "plain feel" doctrine "allow[s] a police officer to seize contraband even if the officer does not have a search warrant for that item, so long as its nature as contraband is immediately apparent." *State v. Bales*, 2d Dist. Montgomery No. 24897, 2012-Ohio-4968, ¶ 25. *See Minnesota v. Dickerson*, 508 U.S. 366, 375-376, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) ("If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons * * *."). "An object's incriminating nature is immediately apparent when a police officer has probable cause to believe the item is associated with criminal activity." *Bales* at ¶ 25, citing *State v. Halczyszak*, 25 Ohio St.3d 301, 303, 496 N.E.2d 925 (1986).

{¶ 25} Here, Officer Gray testified that when he felt the plastic baggie in Thomas's pocket, he knew immediately that it contained drugs: "* * * I could feel the plastic baggie, a small plastic baggie. It was in a knot. And that is typically when I encounter illegal drugs, they are packaged that way in a plastic baggie tied in a knot." (Tr. 14). Furthermore, the baggie contained what felt to Gray "like a powdery chunky substance." (*Id.*). Officer Gray's experience had taught him that such objects turn out to be drugs: "Due to my experience because when I've pat people down before, I felt this same type of object in their pants[,]" "[a]nd it ends up being illegal drugs." (*Id.* at 38).

{¶ 26} We conclude that Officer Gray had reasonable suspicion to justify a pat-

down search and probable cause to associate what he felt in Thomas's pocket with criminal activity, entitling Gray to seize the item.

## C. The statements

{¶ 27} Finally, Thomas argues that his admission to the officers should also be suppressed. His only argument for suppression was that his admission was the product of an unlawful search or seizure. Given that Thomas has failed to convince us that either the search or seizure here was unlawful, his fruit of the poisonous tree argument fails. Therefore, we conclude that the trial court did not err by admitting Thomas's admission.

## III. Conclusion

{¶ 28} The trial court did not err by overruling Thomas's motion to suppress. The sole assignment of error is overruled, and the trial court's judgment is affirmed.

. . . . . . . . . . . . .


TUCKER, J., concurs.

DONOVAN, J., concurs in judgment only.


Copies sent to:

Mathias H. Heck Jr.
Heather N. Jans
Ben M. Swift
Hon. Mary L. Wiseman